UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | | |
|---|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, | ) | | |
| | ) | | |
| *Plaintiff,* | ) | | |
| *v.* | ) | No. 1:03-cv-259 | |
| | ) | *Edgar* | |
| WILLIE L. STANLEY, individually and d/b/a STANLEY PAVING, and THE ESTATE OF CHARLES N. MCDOWELL, through administrator, CONNIE V. MCDOWELL, | ) | | |
| | ) | | |
| *Defendants.* | ) | | |

**<u>MEMORANDUM</u>**

Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide") brings this declaratory judgment action against defendants Willie L. Stanley and the Estate of Charles N. McDowell ("Estate") pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57. Nationwide seeks a declaration from this Court that Nationwide Policy No. 63 BA 133-121-0001 issued to defendant Stanley provides no coverage for the injury and death of Charles N. McDowell. It further seeks a declaration that the death of Charles N. McDowell did not arise from an "accident" as defined by Nationwide's policy and is therefore excluded by the terms of the policy.

Nationwide moves for summary judgment on its claims and requests that this Court hold that the incident occurring between Stanley and Charles McDowell was not an event covered by the terms of its insurance policy with Stanley and that the damages to McDowell are excluded by the policy's exclusion for intentional or expected injuries. [Court Doc. No. 46]. The Estate

opposes Nationwide's motion for summary judgment and cross-moves for summary judgment. [Court Doc. Nos. 52-1, 49]. It requests that this Court hold that Nationwide is precluded from claiming an exclusion from coverage for damages to the Estate due to its alleged breach of its duty to defend Stanley in a state court action filed by the Estate against Stanley.

After reviewing the record, the Court finds that Nationwide's motion for summary judgment will be GRANTED and the Estate's motion for summary judgment will be DENIED.

## I.    Background

Based on the undisputed record, the material facts are as follows. On August 30, 2002 Nationwide issued a Business Auto Coverage Form, Policy No. 63 BA 133-121-0001, to defendant Stanley d/b/a Stanley Paving. [Court Doc. Nos. 53; 1, Ex. 1]. The insurance policy provision relating to "liability coverage" states:

### SECTION II - LIABILITY COVERAGE

### A.    Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto". . . .

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

[Court Doc. No. 1, Ex. 1, p. 34]. The insurance policy also contains the following definition:

### DEFINITIONS

2

"Accident" includes continuous or repeated exposure to the same conditions

resulting in "bodily injury" or "property damage".

[Court Doc. No. 1, Ex. 1, p. 41].  Further, the policy contains the following exclusion from

coverage:

> B.     **Exclusions**
> This insurance does not apply to any of the following:
>> 1.     **Expected or Intended Injury**
>>        "Bodily injury" or "property damage" expected or intended from
>> the standpoint of the "insured".

[Court Doc. No. 1, Ex. 1, p. 35].

On March 18, 2003 Stanley's truck collided with Charles McDowell's truck, and the

collision resulted in McDowell's death.  [Court Doc. No. 53].  Following the collision between

the two vehicles, a grand jury in Bradley County Criminal Court indicted Stanley for first degree

murder.  [Court Doc. No. 53; Court Doc. No. 47].  On June 22, 2004 following a trial, a jury

found Stanley guilty of voluntary manslaughter.  [Court Doc. No. 53; Court Doc. No. 47].

Nationwide filed this declaratory judgment action on July 28, 2003.  [Court Doc. No. 1].

On February 2, 2004 the Estate filed suit in Bradley County Circuit Court against Stanley for the

death of Charles McDowell, alleging that Stanley's negligent acts caused McDowell's death.

[Court Doc. Nos. 51, Ex. 4; 55].  Nationwide did not defend Stanley in the state court lawsuit,

and the state court entered a default judgment against Stanley.  [Court Doc. Nos. 51, Ex. 6; 55].

The January 26th 2005 order of the Bradley County court states:

> This cause came to be heard on the 26th day of January, 2005 before the
> Honorable John B. Hagler, Jr., Judge of the Circuit Court of Bradley County,
> Tennessee upon the Complaint filed by Connie McDowell against the defendant
> Willie L. Stanley for the death of Charles McDowell in a motor vehicle accident
> with the defendant on or about the 18th day of March, 2003, upon the waiver of a
> jury trial by the parties, upon the various pleadings, upon oral evidence

3

introduced in open Court and upon the entire record in this cause from all of which the Court finds that the defendant Willie L. Stanley was negligent and that said negligence was the proximate cause of the death of Charles McDowell the husband of the plaintiff, Connie McDowell. The Court specifically finds that the defendant was guilty of negligence and further finds, from the proof, that the defendant's conduct was not voluntary or intentional. The Court finds that the sole cause of the death of Charles McDowell was the negligence of Willie L. Stanley and that said negligence was an accident under Tennessee law. The Court further finds that the accident and subsequent death of Charles McDowell was not an expected or intended result by Willie Stanley. The Court further finds that Connie McDowell is entitled to a judgment in the amount of Nine Hundred and Thirty Five Thousand Dollars.

[Court Doc. No. 51, Ex. 6]. The order also indicates that Nationwide did not defend Stanley in the action. *Id.*

The parties dispute whether Stanley intended to kill McDowell. [Court Doc. No. 53]. The parties agree that Stanley is diagnosed with bi-polar disorder and that he was not taking his prescribed medications on the date of the collision with McDowell. [Court Doc. No. 55]. The Estate argues that Stanley did not intend or expect to injure McDowell and that his behavior was affected by his bi-polar disorder and his failure to take his medication. [Court Doc. No. 55]. The Estate relies on Stanley's deposition testimony in which Stanley states that he had no intention of harming McDowell and that he did not recall any part of the time leading up to the collision, except for seeing "red tail lights and tree limbs." [Court Doc. Nos. 47, 52-5, Deposition of Willie L. Stanley ("Stanley Dep."), pp. 10, 40].

## II.      Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to

4

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it

5

may enter a summary judgment.  *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## III.     Analysis

The Declaratory Judgments Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Nationwide seeks a declaration from this Court that its insurance policy issued to Stanley does not cover damages resulting from the collision with Charles McDowell.  The Estate argues in its motion for summary judgment that Nationwide is precluded from denying coverage in this action because it breached its duty to defend Stanley in the Bradley County action against the Estate.  The parties agree that Tennessee law applies to this action.  The Court addresses the Estate's motion for summary judgment first.

### A.      The Estate's Motion for Summary Judgment

Tennessee courts have determined that "[q]uestions involving an insurance policy's coverage and an insurer's duty to defend require the interpretation of the insurance policy in light of claims asserted against the insured."  *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 490 (Tenn. Ct. App. 1999).  The general rule under Tennessee law is "that in the absence of fraud or collusion an insurer, who has the duty to defend, has timely notice and defends or elects not to defend, is bound by the judgment in such a case as to issues which were or might have been litigated therein."  *Kelly v. Cherokee Ins. Co.*, 574 S.W.2d 735, 737 (Tenn. Sup. Ct.1978) (citing *Pyle v. Bituminous Cas. Corp.*, 299 S.W.2d 665 (Tenn. Ct. App. 1956)).  Doubt as to

6

whether the insurer bears a duty to defend must be resolved in favor of the insured. *Dempster Brothers, Inc. v. United States Fidelity & Guaranty Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964); *Planet Rock, Inc.*, 6 S.W.3d at 490.

In *Kelly* the Tennessee Supreme Court addressed a limitation on the general duty to defend. It quoted with approval from a Fourth Circuit opinion regarding a claim of estoppel by judgment in an insurance controversy brought to determine whether acts of the insured were intentional or expected from the standpoint of the insured. 574 S.W.2d at 737-38. The court in *Kelly* analyzed the purpose of estoppel by judgment:

> 'The underlying purpose of the doctrine is to obviate the delay and expense of two trials upon the same issue one by the injured party against the indemnitee and the other by the indemnitee, or the injured party against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; . . . The indemnitor may not be under a contractual obligation to defend, but if he fails to assume the burden of the defense he takes the risk for he is bound by any judgment against the indemnitee where their interests in the defense of the suit are identical.
> It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance. . . . It is obvious that the Insurance Company was not qualified to undertake the defense of the insured in the suits by the injured parties against him, and that this disqualification was due to the insured's own conduct. It was not possible for the company in these suits to defend the insured, and at the same time protect its own interests. It could not exculpate itself by showing that the injurious acts of the insured were beyond the scope of the policy for this showing would establish the liability of the insured to the injured parties to an even greater extent than that claimed in the complaints.'

*Id.* (quoting *Farm Bureau Mut. Automobile Ins. Co. v. Hammer*, 177 F.2d 793, 799 (4th Cir. 1949)); *see also Alabama Farm Bureau Mut. Cas. Ins. Co. v. Moore*, 349 So.2d 1113 (Ala. Sup. Ct. 1977).

In *Kelly* the injured plaintiff had been awarded a judgment in a prior action for injuries sustained by bullet wounds and blows with a shotgun. 574 S.W.2d at 736. The defendant in the prior lawsuit was the named insured in a homeowner's insurance policy issued by Cherokee Insurance Company. The insurance company denied coverage of the defendant, and it informed him that it would not defend him in the lawsuit. *Id.* The trial court issued a default judgment against the defendant. The plaintiff then filed the lawsuit at issue in *Kelly* against Cherokee Insurance Company seeking to recover on the prior default judgment against the defendant. *Id.* The insurance company denied that coverage existed because of an exclusion in the policy for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." *Id.* The court addressed the issue of whether the insurance company was "estopped, or otherwise precluded from litigating the question of whether [the prior defendant's] acts that injured [the plaintiff] were expected or intended, because of the adjudication in the prior suit that [the plaintiff's] injuries were directly and proximately caused by [the prior defendant's] negligence." *Id.* at 737. The court held that the insurance company was not estopped from arguing that the prior defendant's actions were not covered by its policy under the intentional acts exclusion. *Id.* at 738-39. After reviewing the general rule that an insurer is bound by a prior judgment where its interests and the insured's interests are identical, the court noted that:

> it is our view that this case does not come within the purview of that general rule. The precise issue upon which coverage depends, whether the insured [prior defendant's] acts that inflicted the injuries were 'expected or intended' was not and could not have been litigated in the tort case. Defense of the insured in the

tort action would cast the insurer and the insured in the untenable position of attempting to cooperate when their interests are adverse, and in the absence of an identity of interest judgment by estoppel does not apply.

*Id.* at 737; *see also State Farm Fire and Casualty Co. v. Engstrom*, 933 F.2d 772 (9th Cir. 1991).

The issue addressed in *Kelly* is the precise issue raised by the Estate in its motion for summary judgment in the instant action. In addition, the insurance policy here contains the same language as contained in the insurance policy in *Kelly*. Judgment by estoppel may work against an insurer where the interest of the insurer and the insured are identical. *Kelly*, 574 S.W.2d at 799. However, as noted by the Fourth Circuit in *Hammer*, the insured's and the insurer's interests are not identical where it is not possible for the insurer to defend the insured, as well as protect its own interests. 177 F.2d at 801. In the instant action, Nationwide chose not to defend Stanley in the action in Bradley County Circuit Court because it could not do so and simultaneously preserve its contention that Stanley's conduct was intentional and therefore excluded from coverage under its policy. This Court concludes that because Nationwide's and Stanley's interests in the Bradley County Circuit Court action were not identical, the general rule of judgment by estoppel applicable to insurers does not apply to the instant action.

The Estate argues that estoppel should also apply based on the alleged representations of Nationwide's agent to Stanley that it would defend Stanley in the Bradley County Circuit Court action. The Tennessee Supreme Court has held that "[r]egardless of which language is selected by the insurer, the insured has a valid right to expect coverage as promised by the insurer's agent. The doctrines of waiver and estoppel should be available to protect that interest, even though they have the effect of broadening the coverage of the policy." *Bill Brown Const. Co., Inc. v. Glen Falls Ins. Co.*, 818 S.W.2d 1, 11 (Tenn. Sup. Ct. 1991). The court

9

reaffirm[ed] the long-standing rule in Tennessee that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent. Of course, the burden of proof, as in other cases, falls upon the insured to prove that a misrepresentation was made and that the insured reasonably relied upon that misrepresentation.

*Id.* at 13. The Estate alleges that a Nationwide agent, Vickie Edgemon, informed Stanley that Nationwide would defend him in the Bradley County action unless it informed him otherwise. [Court Doc. No. 51-1, Court Doc. No. 51, Affidavit of Vickie Edgemon, ¶¶ 4-6]. Nationwide presents an issue of fact regarding whether Vickie Edgemon, who is alleged to have been Stanley's girlfriend at the time, had the authority to make statements about Nationwide's coverage to Stanley. [Court Doc. No. 54, Affidavit of Kathy Wilson ("Wilson Aff."), ¶¶ 5-8]. Nationwide asserts that its insurance sales representatives are not authorized to make coverage determinations. *Id.* at ¶¶ 5-6. Thus, Nationwide has created an issue of fact regarding whether Stanley reasonably relied on Ms. Edgemon's statement. On summary judgment, issues of fact must be viewed in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. The Estate fails to establish that no genuine issue of material fact exists regarding whether Nationwide's agent made a misrepresentation upon which Stanley reasonably relied. Further, the Estate has not pointed to any legal authority indicating that an insurer's waiver of a question of insurance coverage with respect to its defense of an action by an injured party against an insured party judicially estops the insurer from raising the insurance exclusion issue against the injured party in an entirely separate action. Because the Estate fails to demonstrate that Nationwide is precluded from raising the defense of exclusion from coverage, the Estate's motion for summary judgment will be DENIED.

**B.      Nationwide's Motion for Summary Judgment**

Under Tennessee law "[i]t is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. Sup. Ct. 1991). In addition, the insurer bears the burden of demonstrating that the injury was caused by an exclusion in the policy. *See Farmers Bank & Trust Company of Winchester v. Transamerica Ins. Co.*, 674 F.2d 548, 551 (6th Cir. 1982).

Both parties devote much energy arguing about whether the evidence supports a finding that Stanley intended to kill McDowell. The Court finds that this issue is immaterial because Stanley's conviction by a jury for voluntary manslaughter collaterally estops the Estate from arguing that Stanley did not intend to kill McDowell.

The Estate is correct that, when interpreting an "expected" or "intended" insurance policy exclusion, the Tennessee Supreme Court has held that "in order to find that an intended or expected acts exclusion applies, it must be established that the insured intended the act *and also* intended or expected that injury would result." *Tennessee Farmers Mutual Ins. Co. v. Evans*, 814 S.W.2d 49, 55 (Tenn. Sup. Ct. 1991). In *Evans* the court also noted that "[t]he intent itself may be actual or inferred from the nature of the act and the accompanying reasonable foreseeability of harm. It is immaterial that the actual harm was of a different character or magnitude or nature than that intended. We believe that this approach has the effect of providing a benefit under an insurance policy in exchange for the premiums paid therefor, without encouraging the insured to incur civil tort liability." *Id.*

Tennessee law defines voluntary manslaughter as, "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable

11

person to act in an irrational manner." Tenn. Code Ann. § 39-13-211. Tennessee law defines an

"intentional" and a "knowing" criminal mental state as:

> (a) "Intentional" refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.
> (b) "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(a)-(b). Further, under Tennessee law a criminal conviction

requires the state to prove the "culpable mental state required" "beyond a reasonable doubt."

Tenn. Code Ann. § 39-11-201. The parties agree that a jury convicted Stanley of voluntary

manslaughter. [Court Doc. No. 47].

Tennessee courts have outlined the elements necessary for collateral estoppel to apply.

The Supreme Court of Tennessee has noted that:

> Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit. . . . To sustain a plea of collateral estoppel it must be shown, inter alia, that the issue sought to be concluded not only was litigated in the prior suit but was necessary to the judgment in that suit.

*Massengill v. Scott*, 738 S.W.2d 629, 631-32 (Tenn. Sup. Ct. 1987); *see also, Richardson v.*

*Tennessee Board of Dentistry*, 913 S.W.2d 446, 459 (Tenn. Sup. Ct. 1995); *Goeke v. Woods*, 777

S.W.2d 347, 349 (Tenn. Sup. Ct. 1989). Tennessee courts have noted that "[t]he Tennessee rule

holds that privity as used in the context of res judicata does not embrace relationships between

persons or entities, but rather [goes] to the subject matter of the litigation." *Phillips v. General*

*Motors Corp.*, 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984) (citing *Cantrell v. Burnett &*

*Henderson Co.*, 216 S.W.2d 307, 309-10 (Tenn. Sup. Ct. 1948)). Further, Tennessee courts have

12

held that an insurance company has privity with its insureds. *Haulers Ins. Co., Inc. v. Burke*, 1997 WL 819929, *4 (Tenn. Ct. App. 1997).

Although the parties have not pointed the Court to a Tennessee case that presents the precise issue raised in the instant action, several Tennessee courts of appeal decisions provide helpful guidance to this Court regarding the issue presented here. For instance, in *Grange Mut. Cas. Co. v. Walker*, a Tennessee court of appeals addressed a question of whether a "plea of guilty to voluntary manslaughter is a conclusive admission against a policyholder on the issue of policy coverage on the shooting, where the policy specifically excludes coverage 'for bodily injury or property damage which is either expected or intended from the standpoint of the insured.'" 652 S.W.2d 908, 909 (Tenn. Ct. App. 1983). In resolving this issue, the court noted that "[a] criminal court conviction may work an estoppel in a subsequent civil action where the issues have been determined in the previous criminal prosecution." *Id.* at 910 (citing *Tietelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal.2d 601, 25 Cal. Rptr. 559, 375 P.2d 439 (1962)). The court held that a guilty *plea* "is generally not conclusive on the issues in a subsequent civil action, but is competent evidence as an admission against interest." *Grange Mut. Cas. Co.*, 652 S.W.2d at 910 (citations omitted). Subsequent Tennessee cases have applied the rule announced in *Grange Mut. Cas.*, albeit in a different context, that a criminal court conviction works an estoppel in a subsequent civil action involving the same issues. *See e.g. McFadgon v. City of Memphis*, 731 S.W.2d 530, 531 (Tenn. Ct. App. 1986).

In *Tietelbaum Furs, Inc.*, relied upon by the court in *Grange Mut. Cas. Co.*, the court addressed whether a prior criminal court conviction for robbery by one of plaintiff's corporate executives precluded a plaintiff corporation from recovering under an insurance policy in a

subsequent civil action. 375 P.2d at 440. The court asked three questions in determining

whether the application of collateral estoppel was appropriate: "'Was the issue decided in the

prior adjudication identical with the one presented in the action in question? Was there a final

judgment on the merits? Was the party against whom the plea is asserted a party or in privity

with a party to the prior adjudication?'" *Id.* (quoting *Bernhard v. Bank of America*, 19 Cal.2d

807, 813, 122 P.2d 892, 895 (Cal. Sup. Ct. 1942)). The court answered all three questions

affirmatively, and therefore, determined that the prior criminal conviction collaterally estopped

the plaintiff corporation from claiming recovery of insurance proceeds in the subsequent civil

action. *Teitelbaum Furs, Inc.*, 375 P.2d at 440. In *Teitelbaum Furs* the plaintiff argued that

collateral estoppel should not apply because there was no mutuality of parties and it did not have

an ability to participate in the litigation in the prior criminal action. *Id.* at 441. In addition, it

noted that the criminal defendant in the prior action did not testify. *Id.* The court rejected these

arguments and in doing so, expressed the policy behind the application of collateral estoppel for

a prior criminal conviction:

> Although plaintiff's president did not have the initiative in his criminal trial, he
> was afforded a full opportunity to litigate the issue of his guilt with all the
> safeguards afforded the criminal defendant, and since he was charged with
> felonies punishable in state prison . . ., he had every motive to make as vigorous
> and effective a defense as possible. Under these circumstances, we hold that any
> issue necessarily decided in a prior criminal proceeding is conclusively
> determined as to the parties if it is involved in a subsequent civil action.

*Id.* at 441-42.

Similarly, in many other jurisdictions in both state and federal courts, courts have

estopped injured parties in civil actions from recovering insurance proceeds where the insured

was convicted by a jury of an intentional crime in a prior criminal trial. For example, in

*Tradewind Ins. Co., Ltd. v. Stout*, the court addressed whether an injured party was collaterally estopped from litigating the insured's intention to injure in a declaratory judgment action filed by the insurer relating to insurance coverage where the insured had been previously convicted of attempted second degree murder. 938 P.2d 1196, 1198 (Haw. Ct. App. 1997). The court concluded that the insured's actions were excluded by the intentional injury exception to the homeowner's insurance policy and that the injured party was collaterally estopped from litigating the issue. *Id.* In making its determination, the court reasoned,

> a judgment of attempted second degree murder would embody the jury's finding that the defendant intended to cause the death of another person. Applied to the admitted facts here, then, the judgment of attempted second degree murder established beyond a reasonable doubt that [the insured] *intended* to cause [the injured party's] death.

*Id.* at 1201-02. In opposition to the summary judgment motion by the insurer in *Stout*, the injured party tried to raise a genuine issue of material fact regarding whether the insured's drug use impaired the intentional state of mind requirement for the conviction of second degree murder. *Id.* at 1202. The court rejected this argument because the issue "had already been comprehensively litigated at the criminal trial" and noted that the insured had put in evidence at his criminal trial of his use of crystal methamphetamine and expert testimony regarding the drug's ability to cause an individual to become paranoid and delusional. *Id.* In *Stout* the jury had determined in the prior criminal trial that despite his use of drugs, the insured had intended to kill the injured party. *Id.* at 1203.

The *Stout* court extended the rule of collateral estoppel to apply to the insurer and the injured party, neither of whom was a party to the criminal action. 938 P.2d at 1205. The court reasoned that "under certain circumstances, an injured person may stand in the shoes of the

insured in subsequent civil litigation involving identical issues fully litigated and determined on the merits in a prior criminal trial." *Id.* at 1206 (relying on *Safeco Ins. Co. of America v. Yon*, 796 P.2d 1040 (Idaho Ct. App. 1990)). Other courts have also determined that privity exists for collateral estoppel purposes in a civil action between an injured party and an insurer even though neither party participated in the prior criminal action. For example, in *Figueroa v. Hartford Ins. Co.*, the court noted that the injured party's rights under the insurance policy were derivative of the rights of the insured and thus privity was established for purposes of collateral estoppel. 575 A.2d 888, 892-94 (N.J.Super.Ct. App. Div. 1990).

Other courts have followed the reasoning applied in *Stout*. For example, in *State Farm Fire and Cas., Co. v. Reuter*, the court held that a victim was collaterally estopped from litigating with an insurer an insured's intent to commit a rape where the insured had been found guilty of rape by a jury who rejected his defense that he was not responsible due to mental disease. 700 P.2d 236, 238-241 (Or. Sup. Ct. 1985). *See also, Baber v. Fortner*, 412 S.E.2d 814, 819 (W. Va. Sup Ct. 1991); *Figueroa*, 575 A.2d at 891-92; *Aetna Cas. and Sur. Co. v. Jones*, 596 A.2d 414 (Conn. Sup. Ct. 1991); *Engstrom*, 933 F.2d at 773; *New Hampshire Ins. Co. v. Vardaman*, 838 F.Supp. 1132, 1136 (N.D. Miss. 1993); *State Farm Fire & Cas. Co. v. Bellina*, 264 F.Supp.2d 198, 204-06 (E.D. Penn. 2003); *Aetna Cas. & Sur. Co. v. Sprague*, 415 N.W.2d 230 (Mich. Ct. App. 1987); *State Farm Fire & Cas. Co. v. Fisher*, 481 N.W.2d 743 (Mich. Ct. App. 1992); *Aetna Life and Cas. Ins. Co. v. Johnson*, 673 P.2d 1277, 1280 (Mont. Sup. Ct. 1984).

In deciding whether a criminal court conviction should estop an issue in a subsequent civil proceeding, courts also pay special attention to whether there was a full and fair opportunity

to litigate. *See e.g., Jones*, 596 A.2d at 425. The seriousness of the criminal charges are a factor to be considered. *Id.* In *Jones* the court found that a criminal accusation of murder was very serious and that the defendant was afforded the full range of constitutional protections afforded by criminal procedure. It concluded that therefore there was no question that the insured's intent was thoroughly litigated. *Id.* at 426.

The instant action is highly similar to the situation faced by the courts in many of the cases cited *supra*. In the instant action the parties agree that a jury convicted Stanley of voluntary manslaughter, an intentional or knowing crime under Tennessee law. Tenn. Code Ann. § 39-11-211. It appears from the record that Stanley's intent and his bi-polar diagnosis were clearly issues before the jury. *See* [Court Doc. No. 52-1]. Further, because of the risk of incarceration, Stanley had every incentive to pursue his defense vigorously. As the court noted in the factually analogous case of *Travelers Indem. Co. v. Walburn*, "[i]f the criminal jury found beyond a reasonable doubt that [defendant] by his acts either expected or intended to injure [victim], it would be an exercise in futility for this Court to retry the same issues." 378 F.Supp. 860, 865 (D.C.D.C. 1974).

The Court concludes that the elements of collateral estoppel are present in this case. The Court finds that the Estate is in privity with Stanley, the insured, and its rights derive from Stanley's rights. *See Stout*, 938 P.2d at 1206; *Figueroa*, 575 A.2d at 892, 894. Further, the Court concludes that the issue of whether Stanley intended to kill McDowell was at issue in Stanley's criminal trial and that his intent, as defined by the court in *Evans*, was necessary to the criminal conviction for voluntary manslaughter. *See* Tenn. Code Ann. §§ 39-11-201; 39-11-211; 39-11-302; 814 S.W.2d at 55-56. Further, the parties fully litigated the issues of intent, Stanley's

bi-polar disorder, and his mental condition, and presented these issues to the jury. [Court Doc. No. 52-1]. Because all the elements of collateral estoppel are present in this case, the Estate is collaterally estopped from arguing that Stanley did not intend to kill McDowell.

The Court is aware that there are decisions issued by courts disagreeing with the line of authority cited above. *See e.g., Illinois Farmers Ins. Co. v. Reed*, 662 N.W.2d 529 (Minn. Sup. Ct. 2003). In addition, the Court is aware of the Tennessee Supreme Court's admonitions against the use of "offensive" collateral estoppel. *See Algood v. Nashville Mach. Co.*, 648 S.W.2d 260, 262-63 (Tenn. Ct. App. 1983) (citing *Cole v. Arnold*, 545 S.W.2d 95, 97 (Tenn. Sup. Ct. 1977)). However, the concerns raised by the courts in *Cole* and *Algood* do not appear to be present in the instant action. In those cases the courts were concerned with plaintiffs in a multi-party accident taking a "wait and see" approach to litigation and thereby increasing the number of lawsuits rather than decreasing them. *See Algood*, 648 S.W.2d at 263. The courts were also concerned with unfairness to the defendant because it may have had fewer incentives in the earlier action to defend vigorously or it may not have had the same procedural opportunities. *Id.* In the instant action, the Court is not facing a potential multi-plaintiff situation; there was only one injured party in this action, Charles McDowell. In addition, Stanley was afforded the full panoply of criminal procedural rights at trial, which are more protective of defendants' rights than civil procedural rules are. *See e.g. Teitelbaum*, 375 P.2d at 441-42. Further, Stanley had every incentive to defend himself vigorously because he was facing a very serious charge with serious repercussions. Moreover, *Cole* and *Algood* did not involve collateral estoppel by a prior criminal conviction. In *Grange Mut. Cas. Co.* a Tennessee

18

court of appeals indicated that criminal convictions may work a judicial estoppel in a subsequent civil action. 652 S.W.2d at 910.

The Court believes that its decision fits in with a "growing trend" in both state and federal courts that a criminal conviction of an intentional crime may collaterally estop litigation of the intent to injure in a subsequent civil action to recover insurance proceeds. *See Johnson*, 673 P.2d at 1280. As the Montana Supreme Court noted in *Johnson*, collateral estoppel in the situation faced by the parties in the instant action protects the important policy of "stability of judgments." *Id.* In that case, the court noted that it would "not show such lack of faith in the criminal judicial system to allow an issue fully and fairly litigated in a criminal trial to be completely relitigated in a subsequent civil trial." *Id.*

## IV. Conclusion

For the reasons set forth in detail above, the Court concludes that:

(1)     That aspect of Nationwide's motion for summary judgment seeking a summary judgment as to Nationwide's Business Auto Coverage Policy No. 63 BA 133-121-0001 will be **GRANTED** as follows:

(a)     The Court **DECLARES** pursuant to 28 U.S.C. § 2201 that Nationwide Policy No. 63 BA 133-121-0001 issued to defendant Willie L. Stanley provides no coverage for the injuries to and death of Charles N. McDowell;

(b)     The Court **DECLARES** pursuant to 28 U.S.C. § 2201 that the death of Charles N. McDowell did not arise from an "accident" as defined by Nationwide's policy No. 63 BA 133-121-0001 because it was "expected" or

19

"intended" from the standpoint of the insured, Willie L. Stanley, and is thus

excluded by the terms of the policy.

(2)     The Estate of Charles McDowell's motion for summary judgment will be

**DENIED**.

A separate judgment will enter.


                            _/s/ R. Allan Edgar_____
                            R. ALLAN EDGAR
                            UNITED STATES DISTRICT JUDGE